^Jadge- Underwood,
delivered the opinion of the court.
War. B. Siiaciojeford, having obtained* a judgment against Arthur Mitchell, Dalton the plaintiff in ertor and -John F., Mitchell, united with A. Mitchell, and replevied the debt on the 16th day of January, 1821. On. the 17th of November,, 1822, A. Mitchell executed' a mortgage to Dalton and J. F. Mitchell, to indemnify them against loss,in consequence of their suretyship, upon the lower half of lot, No. 6, , and lot, No. 141, in Maysville This mortgage w as acknowledged.and admitted to recoid in the proper office* on the 2d of December, 1822. In virtue of an execution which issued on the replevin bond, bearing date, the 30th of May, 1822, and returnable the Saturday succeeding the 1st Monday in August, the sheriff sold pro-_ perty belonging to Dalton, for $410, which was applied to the payment of the execution and commissions. The date of the sale, does not appear from the return of the sheriff. But it appears from the credit given on the second execution that the sale took place before the 15th of August, 1822. On the 29th of January, 1823, John F. Mitchell paid ‡1231 38 cents, the balance due upon the replevin bond. Dalton’s property was sold for, and Mitchell’s payment made, in notes on the bank of the commonwealth. On the 20lh day of December, 1822, an execution in favor of Shackleford, issued against A. Mitchell upon a judgment distinct from that replevied as aforesaid. This execution, while in full force, was levied upon the lots mortgaged as above, and they were sold as the property of A. Mitchell. Shackleford purchased them.
Under the foregoing state of facts, Dalton and J. F. Mitchell exhibited their joint bill against A. Mitchell and Shackleford, with a view to foreclose their rñort-, gage and to obtain remuneration for their expenditures in paying the debt. A. Mitchell did not gainsay the right of the complainants, but Schackleford assailed it .upon the spore of fraud and insisted that he had a right to hold the property under his purchase discharged from any lien of the complainants.
*373 The circuit court decreed in behalf of J. F. Mitchell, but pronounced the mortgage fraudulent as to Dalton and refused to give him any relief. To reverse this decree Dalton prosecutes this writ of erl-or.
Shackleford insisted in his answer made to operate as a cross bill, that the mortgage had been fradulently anti-dated, and he stated many other matters, with a view to show that the complainants and particularly Dalton had fraudulently united with A. Mitchell to prevent him from collecting his deb.ts. The charge of anti-dating the mortgage is denied and there is no proof to the contrary. Besides,-it was acknowledged before the clerk, previous to the date-of Shackleford’s execution, under which he made the purchase. There is no ground for the imputation of.fraud, growing out of the date of the mortgage.
It seems that A. Mitchell owned a stock of ffterchan-dize, and that Dalton was his storekeeper and brother-. in-law. Mitchell in laboring circumstances, transferred his merchandize to Dalton, who became owner and Michell was converted- into the storekeeper! The goods so transferred, which were, for the most part remnants, were converted or a portion of them, into- a drove of hogs. Shackleford levied an-execution upon them as the property of A. Mitchell and sold them as such. .Dalton persisting in his claim to the hogs instituted suit, but w;as defeated. Dalton executed notes for ‡50 each to Ralls in part paymeht of a large note he had given to A. Mitchell, who had assigned it to Ralls, who obtained judgment upon those notes for $50, and had executions levied on the hogs as the property of Dalton, after they had been sold under Shacklefords execution against A. Mitchell. New suits sprung up, in which the claim of Dalton was defeated. These proceedings turned against Dalton and those claiming under him, upon the ground, no doubt, that the transfer of the merchandise by. Mitchell to him, was fraudulent; and it is the fraud evinced by these transactions upon which Shackleford relies to- establish the fraudulency of the mortgage! All these transactions took place and were terminated' before the execution of the1 mortgage. Poyntz and Co. who claimed part of the hogs under the sale made in virtue of Shackleford’s execution against A, Mithell, and which were afterwards levied on, to *374 satisfy the execution of Ralls against Dalton, instituted suit against Ralls and others, in 1820, for taking the hogs under Ralls’ execution and recovered judgment therefor in June, 1821. This judgment was satisfied by proceedings had under an execution which issued thereon, bearing date the 12th of Nov. 1821. It is very obvious that if Dalton acted'fraudulently in purchasing the goods from A. Mitchell, that he made no profit so far as he vested the goods or their proceeds in the drove of hogs; This transaction, like most other devices intended to defraud creditors, turned out to be a serious injury, to all parties concerned. Whether Dalton attempted any other-speculation with any other-qf the goods or what quantity or value remained after the payment for the hogs, we are not informed. It seems, however, that in 1821, or 1822, from the deposition of Thomas, that Dalton was yet able to furnish goods to satisfy an execution against him, from which it may be inferred, that the stock was not exhausted in payment for the hogs. Shackleford, in his first supplemental- answer, charges that, at the lime Dalton became surety in the replevin bond and at the time the mortgage bears date, he was indebted to A. Mitchell in a large a mount, exceeding the amount of the replevin bond, and which sum he-had never paid. Dalton and A. Mitchell both, in their-answers to this allegation, admit, that at the dates of the replevin bond and mortgage, A.. Mitchell, held Dalton’s notes for a sum larger than the replevin bond. But, by way of avoiding the effect 6f the admission,, they state that the notes were given in consideration of the merchandize purchased by Dalton,, who invested the proceeds thereof in the purchase- of the drove of hogs which were sold by Shackleford under his execution, and after much litigation and, trouble, finding that the contract would turn out greatly to the injury of. Dalton, the parties agreed to rescind it, and did so, by A. Mitchell surrendering to Dalton his notes, which they declare was previous to the sale of Dalton’s property, as charged in the original bill. Whereupon, they deny, that at the lime Dalton’s property was sold under the execution of Shackleford, Dalton owed Arthur Mitchell “one cent.” ' The monstrous inconsistency of this defence is too palpable to escape the most careless attention. The sale of Dalton’s property took place before the mortgage was executed. If then A. Mitchell held Dalton’s notes at the date of the replevin *375 bond-and at the date of the mortgage which is clearly admitted in both their answers, he must have held them at the date of the sale, and it follows, that so much of their answers as asserts that the contract was rescinded and the notes surrendered before the sale, is untrue.
Fraudulent aga¡n t bona Me purchaser mortgagor!
Denny, for plaintiff.
This inconsistency, connected' with the other tranc-tions of a fraudulent character, in which Dalton is involved with A. Mitchell and which met the condemnation of juries upon several occasions, induces us to decide that his claim is presented under such a cloud-of suspicion, as not to merit the countenance of a chancellor, Truth and honesty are never involved in inconsistency. Fraud travels such devious by-paths, that it is even in danger of loosing itself and unawares, exposing its deformity to those who pursue the straight open road which crosses its track, it is worthy of remark, that, although the sale of Dalton’s land had taken place before the mortgage was executed, there is no particular stipulation, in respect to the $110, for which it sold. This would probably have been made, if there had not been some other arrangement in respect to it.
The decree as to Dalton, is affirmed, but without costs as the cause has been heard in this court upon the default of his adversary.